**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES CARRINGTON,** | : | |
| **Plaintiff** | : | **CIV. ACTION NO. 3:25-CV-2293** |
| **v.** | : | **(JUDGE MANNION)** |
| **SGT. MOSSER, *et al.*,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

This is a prisoner civil rights case in which plaintiff alleges that defendants violated his civil rights in various ways after he reported to prison officials that correctional officers had hung a noose in the prison. Defendants have moved to dismiss the complaint. For the reasons set forth below, the court will grant the motion to dismiss to the extent that it seeks dismissal of plaintiff's Eighth Amendment claims, deny the motion in all other respects, and order defendants to answer plaintiff's currently operative amended complaint.

## I. BACKGROUND

Plaintiff, Charles Carrington, is currently incarcerated in Fayette State Correctional Institution ("SCI-Fayette") but was incarcerated in Rockview State Correctional Institution ("SCI-Rockview") at all relevant times. He filed this case on December 1, 2025. Defendants moved to dismiss the complaint

on February 9, 2026. (Doc. 13). In response, Carrington filed a motion for leave to amend on May 11, 2026. (Doc. 20). The court granted the motion to amend in part on July 6, 2026, dismissing the claims against defendants Salamon and Andrews but otherwise allowing the amended complaint to proceed. (Doc. 21). The court accordingly denied the motion to dismiss as moot. (*Id.*). Carrington's amended complaint was docketed that day. (Doc. 22).

The amended complaint alleges that on Black Friday, November 24, 2023, inmates were called out of their cell around 7:00 a.m. (*Id.* ¶6). As Carrington was exiting his cell, he noticed that inmates on the housing unit were "in a tense uproar." (*Id.* ¶7). Another inmate, Charles Gilyard, purportedly told Carrington that there were nooses hanging in the officers' station. (*Id.* ¶8). Carrington then walked past the officers' station and found nooses hanging there that had been made out of extension cords. (*Id.* ¶9).

After seeing the nooses, Carrington went to receive his prescription medication. (*Id.* ¶10). When he came back into the housing block, he saw Gilyard talking with other inmates and told him that they should not "lock in" when officers told them to do so. (*Id.* ¶¶11-12). After this conversation, Gilyard approached the officers' station and asked the officers who were there why nooses were hanging in the station. (*Id.* ¶15). One of the officers,

defendant Mosser, allegedly stated, "because it's Black Friday." (*Id.* ¶16). He and the other officers, defendants Richards and Kershner, laughed at Mosser's comment. (*Id.*) Gilyard purportedly stated, "y'all think it's funny?" and Mosser responded, "relax, it's a joke." (*Id.* ¶¶17-18). Gilyard told the officers, using "choice words," that he did not think that it was a joke or that it was funny. (*Id.* ¶19). One of the officers then turned the lights off in the officers' station. (*Id.* ¶20). When Carrington and Gilyard returned to their cells, they told the other inmates around them that they should lock in so that they would not be charged with misconduct. (*Id.* ¶21).

On December 12, 2023, Carrington submitted a grievance about the display of the nooses. (*Id.* ¶22). Defendant Andrews, a security captain, denied the grievance on February 5, 2024. (*Id.* ¶23). Carrington appealed, but the superintendent, Bobbi J. Salamon, denied the appeal. (*Id.* ¶24). Carrington subsequently contacted the Pennsylvania State Police and the Pittsburgh office of the Federal Bureau of Investigations in an effort to have criminal charges filed against the officers. (*Id.* ¶¶25-26).

On February 28, 2024, Carrington submitted a request to defendant Salamon noting that he was being subjected to mistreatment by Mosser, Richards, and Kershner and requesting a transfer to another prison. (*Id.* ¶27). Salamon denied the request for a transfer on March 5, 2024. (*Id.* ¶28).

Carrington then sent a letter to Pennsylvania Governor Josh Shapiro on March 10, 2024, detailing the noose incident. (*Id.* ¶29). On March 14, 2024, a reporter for Centre Daily Times published an article about the alleged noose incident. (*Id.* ¶32).

Five days later, on March 19, 2024, Carrington was removed from general population and taken to the prison's restricted housing unit ("RHU"). (*Id.* ¶33). On March 21, 2024, he met with the prison's program review committee, which included defendant Rowe, the prison's deputy superintendent. (*Id.* ¶34). Carrington asked Rowe why he had been placed in the RHU. (*Id.*) Rowe purportedly responded, "you have my facility in an uproar." (*Id.* ¶35). Carrington told Rowe that officers had been tampering with his food, that he had found hair and saliva in his food, and that his medication was always damp when it was given to him. (*Id.*)

On March 22, 202[4],[1] Andrews and two lieutenants, defendant Sherman and another whom Carrington did not know, spoke to Carrington in a "secluded" office. (*Id.* ¶36). Sherman purportedly told Carrington, "I know they hung nooses but y'all . . . muddy the waters because there were too many different versions narrated in numerous grievances about the nooses

[1] The amended complaint states this date as March 22, 2026, but given the context of the amended complaint's factual allegations, this appears to be a typographical error.

hanging." (*Id.*) Carrington responded, "everyone has their point of view, which doesn't change the fact that there were nooses hung." (*Id.*) Sherman told Carrington that he was going to be transferred to SCI-Phoenix and stated, "I'll see you in court in ten years." (*Id.*) Carrington asked why it would be ten years, and Sherman responded, "we have the lawyers to delay it and fight it." (*Id.*) Carrington was subsequently transferred to SCI-Fayette on March 29, 2024. (*Id.* ¶37).

The amended complaint asserts claims for violation of Carrington's right to equal protection under the Fourteenth Amendment against defendants Mosser, Richards, Kershner, and Salamon; cruel and unusual punishment in violation of the Eighth Amendment against defendants Rowe, Andrews, and Sherman; and retaliation in violation of the First Amendment against Rowe, Andrews and Sherman. (*Id.* ¶¶37-43). Carrington seeks damages and injunctive relief. (*Id.* ¶¶45-54). As noted above, the court previously dismissed all claims against Andrews and Salamon for failure to state a claim upon which relief could be granted. (Doc. 21).

Defendants moved to dismiss the amended complaint on July 20, 2026, and filed a brief in support of the motion on August 3, 2026. (Docs. 23-24). Carrington has not responded to the motion, and because the deadline to do so has expired, it is ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief may be granted." Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim, Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 556). "[L]abels and conclusions" are not enough, *Twombly*, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

In resolving a motion to dismiss, the court thus conducts "a two-part analysis." *Fowler*, 578 F.3d at 210. First, the court separates the factual

elements from the legal elements and disregards the legal conclusions. *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 211 (quotations omitted).

Courts must liberally construe complaints brought by *pro se* litigants. *Sause v. Bauer*, 585 U.S. 957, 960 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III. Discussion

### A. Motion to Dismiss

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

Defendants seek dismissal of all of Carrington's claims for failure to state a claim upon which relief may be granted. The court will consider the claims *seriatim*.

The court begins with the Fourteenth Amendment equal protection claim.[2] An equal protection claim can proceed under two theories. Under the traditional theory, a plaintiff must prove "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016). Under

---

[2] Carrington asserts equal protection claims under both the Fifth and Fourteenth Amendments, but because defendants are state government officials the claim is properly construed as a Fourteenth Amendment claim.

the class-of-one theory, a plaintiff must prove that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018).

In this case, Carrington asserts a traditional equal protection claim. Specifically, Carrington, who is black, asserts that defendants discriminated against him and other black inmates by placing a noose in the officers' station and subsequently punishing him for filing grievances and other complaints about the incident. Defendants argue that it is "bold" to conclude that defendants' actions were "racially motivated" and that "he alone was targeted out of the thousands of others of other inmates housed at SCI Rockview." (Doc. 24 at 6).

Defendants' argument is meritless. Assuming the truth of plaintiff's allegations—as the court must at this stage of litigation—the court does not think that it is a "bold" inference to conclude that placing a noose in a place where inmates could see it and then telling inmates that it was placed there "because it's Black Friday" was "racially motivated." This appears to be a completely rational inference and clearly satisfies plaintiff's obligation to plead action based on his membership in a protected class. Moreover,

defendants' argument that plaintiff has to allege that "he alone" was singled out based on his race misunderstands the difference between a traditional equal protection claim and a class of one equal protection claim: in a traditional claim, "the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *see also id.* at 585 (noting that this standard applies to "claims of race and gender discrimination in violation of the Equal Protection Clause"). On the facts as pleaded in the amended complaint, Carrington adequately alleges that he was subjected to negative treatment because he is black. This is sufficient to allege a violation of the Equal Protection Clause of the Fourteenth Amendment.

Turning next to the cruel and unusual punishment claim, this claim is plainly subject to dismissal because the actions alleged by prison officials—placement in the RHU and transfer to another prison—simply do not violate the Eighth Amendment. Placement in the RHU, by itself, does not violate the Eighth Amendment. *See Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (holding that inmate who had been placed in solitary confinement did not establish Eighth Amendment violation where he "presented no evidence that he was denied basic human needs, such as food, clothing, shelter,

sanitation, medical care and personal safety"). Similarly, the transfer to SCI-Fayette does not violate the Eighth Amendment because prisoners do not have a constitutional right to placement in a particular prison. *Olim v. Wakinenoka*, 461 U.S. 238, 244-46 (1983).

As for the retaliation claim, a plaintiff advancing such a claim must allege: (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). Causation may be pleaded by alleging either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing. *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Carrington's retaliation claim is based on the theory that defendants Rowe and Sherman retaliated against him for reporting the noose incident to prison officials and the media by placing him in the RHU and subsequently transferring him to another prison. Defendants argue that Carrington fails to

state a retaliation claim because he fails to allege that Rowe and Sherman were personally involved in placing him in the RHU or transferring him.

The court disagrees. The alleged statements by Sherman and Rowe are sufficient, at this stage, to infer that they were personally involved in the decisions to place Carrington in the RHU and then transfer him out of the prison. According to the complaint, Rowe told Carrington that he was in the RHU because his complaints about the noose incident had put the "facility in an uproar." (Doc. 22 ¶35). Similarly, the complaint alleges that Sherman directly told Carrington that he was being transferred to another prison because of his complaints about the noose incident. (*Id.* ¶¶ 36-37). These allegations are sufficient at this stage to support an inference that Rowe and Sherman were personally involved in the alleged retaliation against Carrington.

Defendants additionally argue that even if they were personally involved, Carrington has not alleged a causal connection between his protected activity and his placement in the RHU or transfer to another prison. Specifically, defendants note that there is no allegation that Sherman or Rowe knew about Carrington's complaints about the noose incident before their actions or that either one of them was the subject of Carrington's complaints. Defendants argue that causation also fails because

approximately three months elapsed between the filing of Carrington's grievance and his placement in the RHU and transfer to another prison.

These causation arguments fail. First, with respect to knowledge, Sherman and Rowe's own statements are sufficient to infer their knowledge of Carrington's complaints for essentially the same reasons they were sufficient to allege their personal involvement. Second, defendants' argument as to whether Sherman and Rowe were the targets of Carrington's complaints cites *Victor v. Lawler*, No. 3:07-CV-2058, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 5, 2010), for the proposition that "retaliation claims fail for lack of causation where the defendant was not a subject of the individual's protected conduct." (Doc. 24 at 11). Even if *Victor* were controlling precedent—which it is not—it by no means establishes a *per se* rule that retaliation claims always fail when a defendant is not the subject of the plaintiff's protected conduct. Rather, the court still must analyze whether a complaint adequately alleges that the plaintiff's protected conduct motivated the defendants' retaliation. Here, the complaint clearly meets that burden because it alleges that defendants made statements indicating that Carrington's protected conduct motivated their actions.

Finally, defendants' temporal proximity argument is based on a clear misreading of the amended complaint. Defendants note that Carrington filed

his grievance in December 2023, but was not placed in the RHU or transferred until March 2024. (Doc. 24 at 12). Thus, defendants argue, there was no temporal proximity because there was a "break in time of several months between Plaintiff engaging in the constitutionally protected speech and being placed in the RHU and moving prisons." (*Id.*)

Defendants' recitation of the complaint is correct with respect to Carrington's *first* protected conduct. But it seemingly overlooks the allegations that Carrington continued to engage in protected conduct for the three months before he was placed in the RHU, including the allegation that a newspaper article about the noose incident was published a mere *five days* before Carrington was placed in the RHU.[3] (*See* Doc. 22 ¶¶ 23-32). Even if there were no allegations of defendants making statements that established causation, this is clearly sufficient to allege an unusually suggestive temporal proximity from which causation could be inferred. Thus, the court concludes that the complaint adequately states a retaliation claim upon which relief may be granted and will deny the motion to dismiss that claim.

---

[3] Defendants' misreading of the complaint suggests a failure to fully understand and summarize all of plaintiff's allegations. Assuming the failure was simply negligent, the court expects a more complete and accurate analysis from counsel, especially in a case where the opposing party is acting *pro se*.

### B. Leave to Amend

Before dismissing a civil rights claim for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *Phillips*, 515 F.3d at 245. Here, the only claim that the court has dismissed is Carrington's Eighth Amendment claim. Because that claim plainly fails as a matter of law, the court will deny leave to amend and this case will proceed to discovery on Carrington's First and Fourteenth Amendment claims.

## IV. Conclusion

For the foregoing reasons, the court will grant the motion to dismiss to the extent that it seeks dismissal of plaintiff's Eighth Amendment claims, deny the motion in all other respects, and order defendants to answer plaintiff's amended complaint. The court will additionally set a case management schedule to govern this case. An appropriate order shall issue.

**Malachy E. Mannion**
**United States District Judge**

**Dated:** 10/22/26
25-2293-01